## Long *v.* Shields, Appellant.

*Deed—Boundaries—Marks upon the ground.*

The courses and distances in a deed always give way to the boundaries found upon the ground or supplied by proof of their former existence when the marks or monuments are gone.

Where a boundary line in a deed is described as being about a certain number of feet " to the line of lot recently conveyed to C.," and it appears that C.'s lot was fenced, and that the grantee understood that he was purchasing only to C.'s lot, the distance mentioned in the deed must give way to the boundaries found upon the ground.

Argued April 15, 1902. Appeal, No. 27, April T., 1902, by defendants, from judgment of C. P. Allegheny Co., May T., 1899, No. 390, on verdict for plaintiff in case of Emily A. Long v. Thomas L. Shields, Helen D. Shields, W. B. Scott and Robert Clark. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Trespass quare clausum fregit. Before EVANS, J.

The court charged as follows:

The plot of ground in dispute together with considerable ground on both sides of it was prior to the spring of 1884 in the possession and ownership of two men by the name of McKinney, Dr. David McKinney and Rev. W. W. McKinney. In

that year they sold off, I believe, all the property which you have heard described in the progress of this case to two different persons; but among others they sold to Mrs. Craig a piece of land fronting on Seminary lane and running back to the line of property of John H. Hampton about 212 feet. The exact location of that property sold is the question in dispute here. [By the lines as established by the wording of the deed, the line of this land sold to Mrs. Craig at that time next to the railroad would be on the location of the fence which now separates the land in possession of the plantiff and of the defendants, and would give to the defendants the title to the land in dispute.

It is alleged by plaintiff that at the time this conveyance was made to Mrs. Craig on April 21, 1884, the lot which was conveyed to her was enclosed by four fences, one on each side; that she was taken upon the ground by the agent of the McKinneys, shown the lot of ground so fenced in, and that a sale was made to her of that property bounded by those four fences; that the deed was delivered to her, that she went into possession through her tenant of this field or lot bounded by these fences, and that she and her vendees, that is, the persons purchasing from her, the plaintiff in this case, remained in possession of that lot of ground from April 21, 1884, until some time in the summer or fall of 1898, when this trespass is alleged to have taken place.

For the purposes of this case, I charge you that if that is the fact, and that fact is not disputed, that would control the lines as laid down in the deed; and the property actually conveyed to Mrs. Craig on April 21, 1884, would be the land enclosed by those four fences, even if the description of that land differed from the description which was set forth in the deed.] [7]   That is a question of law.   That is the law in this case, and you will follow it.   [Let me repeat that if you believe the testimony, and it is not disputed, that Mrs. Craig was taken upon the ground, that she bought the lot of ground enclosed by those four fences and took possession of it, then the land described by the fences was the land that she bought, even if the deed that they referred to differed in its description of the land.   You will probably have no difficulty in arriving at the conclusion that wherever this land was

situated, it was that lot bounded by those four fences that Mrs. Craig bought; because, as I have said, the testimony on that point is undisputed.] [8]

It was my recollection that Mrs. Craig went on the ground with the agent of the vendor and looked at it. If I am mistaken in that, the jury will correct me.

However, there is another question of fact in the case which you will have to determine, and that is the question of the location of these fences, or one of them. It appears to be admitted on all sides that between this lot (and I speak of the lot now as the ground enclosed by these fences), and the Ft. Wayne railroad, there was a driveway immediately adjoining it on the side of the railroad, leading from the Seminary lane back to the stable, and that driveway was fenced on both sides, both on the side next to the property that was sold to Mrs. Craig and on the line of the alley or driveway next to the railroad. The question in dispute is the location of the fence on the side of that alley farthest from the railroad and next to the line of the Craig lot. In 1885 one of these two fences was torn down and a new fence erected in the place of it, by the defendants in this case, at least by two of them, Mr. and Mrs. Shields. The plaintiff alleges, and has offered evidence to substantiate the fact, that the new fence erected in 1885 was on the side of the alley farthest from the railroad and next to the line of the lot of Mrs. Craig. If that be true, then it is admitted that the present fence erected by the defendants is eighteen feet over on the land of the plaintiff, Mrs. Long, assuming that her line ran to the alleyway. The defendants allege that the new fence that was erected was built on the line of the fence on the side of the alley next to the railroad, or farthest from the Craig lot. If that be true, if I remember the figures accurately, then the present fence built there in 1898, is substantially on the line of the old fence which separated the alleyway from Mrs. Craig's lot.

Now, you see the importance of determining on what side the fence erected in 1885 was built. In this matter there is a direct contradiction between the testimony of the plaintiff and that of the defendants. It is the duty of the plaintiff to satisfy you by the weight of the evidence that her contention is correct. That is, if the evidence evenly balances, then the ver-

dict should be for the defendants. If the evidence is stronger for the plaintiff than for the defendants, then your verdict should be for the plaintiff. In determining that, you consider all the testimony offered, the interest of the parties, the interest of the witnesses or their disinterestedness, their capacity for knowing, their creditability, and all the circumstances which go to make up the weight which you will give to their testimony.

If you find that the fence erected there in 1885 was on the line of the alley which separated the Craig lot from at that time the Dickinson lot, as they were fenced in (I do not mean now with reference to the courses and distances marked in the deed, but as they were there on the ground, unfenced), then your verdict should be for the plaintiff, provided that you are satisfied that the land was bought, as I have before explained to you, by the monuments as they existed on the ground. In that case, your verdict should be for the plaintiff. The title in that case to this strip of ground would be in the plaintiff in this suit, and the breaking down of the other fence and the entry on that ground and erecting a fence across it would be a trespass.

The next question for you to determine, in that case, would be, what damage did the plaintiff suffer? She suffered, of course, an injury to her possession, which would entitle her to at least nominal damages. She suffered, in addition to this, any actual loss which she may have sustained by the destruction of growing crops, if any, that she had upon the premises at the time, and by being deprived of the possession of the premises from the time of the trespass until the present time. You have heard the testimony on that subject and I need not go over it.

Of course, if you find, under the direction that I have given to you, that the title to this strip of eighteen feet is in the defendant in this case, Mrs. Shields, then your verdict should be for the defendant. [If you find, on the other hand, that Mrs. Craig bought the land bounded by those fences, then the difference in the description of that lot as so bounded and the lot as described in the deed would be construed in favor of Mrs. Craig's right to the title to the land as bounded by the fences;] [9] and if you find that the present fence is within the line of that, that is, if the fence of 1885 was erected on

the line of the alley next to Mrs. Craig, then it is admitted that the present fence is eighteen feet over on her line, and your verdict should be for the plaintiff for whatever damages she has suffered.

Defendant presented these points:

1. That under all the evidence defendant has shown title to the strip in question and the verdict should be for defendant. *Answer:* Refused. [4]

2. The undisputed testimony being that the present fence complained of is found to agree with the courses and distances of the dividing line as called for by the deed of both parties, such line must control and no different intention can be given to such grant by parol. *Answer:* Refused. [5]

4. A fence such as shown in this case is not of such a stable nature as to be considered a monument, unless made so by the calls in the deeds, and it cannot control the description in the deeds. *Answer:* Refused. [6]

Verdict and judgment for plaintiff for $175. Defendant appealed.

*Errors assigned* among others were (4–9) above instructions, quoting them.

*C. C. Dickey* and *O. S. Richardson*, for appellant.—Existence of a fence on such location as to reduce the lot will not control operation of deed when such fence is not mentioned therein, and grantor has power to convey to any line he chooses: Breneiser v. Davis, 134 Pa. 1; Thompson v. Kauffelt, 110 Pa. 209; Green v. Schrack, 16 Pa. Superior Ct. 26.

As a rule, intention of parties to deed must be ascertained from the writing, and only in rare cases by testimony dehors the instrument: Fuller v. Weaver, 175 Pa. 182.

It is not competent to shift a line or establish a new one by parol: Dawson v. Mills, 32 Pa. 302; Stuven v. Kalchreuter, 8 W. N. C. 44.

*William Yost*, for appellee.—Calls in a deed are always to be controlled by lines on the ground: Lodge v. Barnett, 46 Pa. 484; Craft v. Yeaney, 66 Pa. 210; Burkholder v. Markley, 98 Pa. 37; Willis v. Swartz, 28 Pa. 413; Murphy v. Campbell,

4 Pa. 480 ; Dawson v. Mills, 32 Pa. 302 ; Hagey v. Detweiler, 35 Pa. 412 ; Walker v. Smith, 2 Pa. 44 ; Mageehan v. Adams, 2 Binn. 109 ; Morse v. Rollins, 121 Pa. 537 ; Ogden v. Porterfield, 34 Pa. 197 ; Alshire v. Hulse, 5 Hamm. (Ohio) 534 ; Brolaskey v. McClain, 61 Pa. 163 ; Koch v. Dunkel, 90 Pa. 264.

OPINION BY ORLADY, J., July 10, 1902 :

The plaintiff and defendants in this action of trespass derive their title from a common source, the controversy arising over the legal and actual western boundary of plaintiff's lot. David and W. W. McKinney were the owners of a property which they divided by fences separating it into parts, and as evidence thereof a draft or map was made to conform with the artificial divisions on the ground, subsequent to which they sold to Mary A. Craig by a deed dated April 21, 1884, one of the lots or subdivisions, describing it as " Beginning in the centre of Seminary Lane 452 feet, 1 inch northwardly from the northernmost rail of the Pittsburg, Fort Wayne & Chicago Railway ; thence north 37 degrees, 53 minutes west, 212 feet, 2 inches to the line of land of John H. Hampton ; thence along the line of said John H. Hampton's land south 52 degrees, 7 minutes west, 78 feet, 9 inches ; thence south 37 degrees, 53 minutes east, 212 feet, 2 inches to the centre of Seminary Lane ; thence along the centre of Seminary Lane north 52 degrees, 7 minutes east, 78 feet, 9 inches to the place of beginning." This deed was placed on record on May 1, 1884. David and W. W. McKinney sold by deed dated May 3, 1884, the lot between the railroad and Mrs. Craig's lot to William Dickinson, and described it as " Beginning at the distance of 37 feet northwardly from the northernmost rail of the Pittsburg, Fort Wayne & Chicago Railway on the line of Seminary Lane ; thence by said lane north 52 degrees, 7 minutes east about 334 feet, 4 inches to the line of lot recently conveyed to Mrs. Mary A. Craig." The other courses and distances were not important in the case.

It is to be noted that every distance mentioned in this deed is definitely stated except the last one, and that any uncertainty as to the ending point of the southern line mentioned as above is made certain by the location of the lot " recently conveyed to Mrs. Mary A. Craig." While the Craig deed was on record

when Dickinson bought his lot, the surface markings of the permanent fences that had divided the two lots for ten years previously could not be ignored by him. The case is not one where the land was sold on the faith of a record description alone, and it is clear from the evidence that Dickinson did not rely upon the description in the Craig deed. In 1885 the old fence between the two lots was taken down and rebuilt on the same location by the adjoining owners, and this division was acquiesced in by them for the next fourteen years. With this uncontradicted evidence of the markings on the ground at the time of purchase, it was competent for the plaintiff to show that the division made by the surveyor was in accordance with the directions given to him by the owner of the two lots. The deed to Dickinson granted only " to the line of lot recently conveyed to Mrs. Mary A. Craig ; " and with this distance indefinitely stated in the deed it was competent for the plaintiff to show that, prior to the sale to Dickinson, he, Dickinson, had examined the property and measurements and that it was understood between him and his grantor that he bought only what was left after the sale to Mrs. Craig.

It is a well recognized principle that lines and work marked on the ground must govern in determining the location and extent of a survey ; that everything that is committed to paper afterwards in relation to it is intended and ought to be a copy of what was done and what ought to appear on the ground, in the doing of which, errors may be committed, that render it less to be relied on than the work as it appears by the marks on the ground : Lodge v. Barnett, 46 Pa. 477.

The vital question in this case is the true location of the line agreed upon by Dickinson and his grantors, and this is determined by the location of the line of the Craig lot. The distance mentioned in Dickinson's deed along Seminary lane must yield to the monuments that mark Mrs. Craig's western boundary. At the time of Dickinson's purchase, Mrs. Craig's land was enclosed by four fences, and she was in possession to these fences which were made by the former owner of both properties for the purpose of subdividing the original property, and they were clearly defined and recognized as marks on the ground limiting the title and defining the possession. As such they must stand with like effect as if they had been written into the

conveyance.   The courses and distances in a deed always give way to the boundaries found upon the ground, or supplied by proof of their former existence when the marks or monuments are gone: Morse v. Rollins, 121 Pa. 537.

It has been repeatedly held that the intention of the parties to a deed must be ascertained from the written expression and not from testimony dehors the instrument, except in rare cases: Fuller v. Weaver, 175 Pa. 182.

This case is clearly within the exception.   It was not attempted to locate a line or to establish a new one by parol.   The contention was to continue the line as established by a recognized fence for fourteen years as the dividing line between the properties.   This line was found by the jury to be where the McKinneys had erected the fence and where both Dickinson and Mrs. Craig found it as a monument on the ground at the time of their respective purchases.   This is an artificial monument applicable to the description marking the adjoiner called for in the Dickinson deed, and the holding of the court below is not in conflict with Green v. Schrack, 16 Pa. Superior Ct. 26.   In that case no monuments were referred to, there was no call of any kind for an adjoiner, and it was held that under such circumstances the distance noted in the deed must govern.   But in this, the division fence erected by the McKinneys, the possession of Mrs. Craig up to it, the examination by Dickinson of the property before buying, the call in the deed to the Craig lot as an adjoiner, combine to make this a case where the distance mentioned in the deed must give way to the boundaries found upon the ground.

The judgment is affirmed.